DaNire,
 
 Judge.
 

 William Croom made his last will and testament, by which, he devised lands and bequeathed legacies to his wife and several children, as is set
 
 for that
 
 •large in the copy thereof, which forms a part of the case. The plaintiffs, being the executors, delivered to the defendant
 
 Richard Croom,
 
 one of the sons, his legacy
 
 ;
 
 and took from him a bond, on which this action is founded, to refund his proportionable part of monies or property, to pay the debts of the testator, provided the particular' fund, set apart in the will for the purpose, should not be
 
 sufficient;
 
 and provided further, that the
 
 legacy
 
 of the defendant was, by the will, liable to contribution.— The plaintiffs say, that the particular fund set apart by the will to pay debts, has proved insufficient for that purpose, and that the defendant has been requested to contribute his proportion to aid in extinguishing the debts remaining unpaid. He has refused, and now contends that his legacy, by the terms of the will, was exonerat-. ed. from contribution. The plaintiff's brought this ac
 
 *251
 
 tion of debt on the boud. A case agreed was made up by the parties, and submitted to the court for its decision, whether the defendant, by the will, was exonerated from contributing to pay the debts of the testator or not. If he was, then a nonsuit was to be entered. If he was not, then a judgment was to be rendered for the ! plaintiffs for the penalty of the bond, to be discharged by the payment of the sum reported by the clerk, to bo due
 
 from
 
 the
 
 defendant.
 
 The opinion of the court being in favor of the defendant, a nonsuit was ordered, from which judgment the plaintiffs appealed.
 

 "Whether
 
 Richard Groom,
 
 should contribute or not, to the payment of the debts of the testator, in consequence of receiving his legacy, under the terms it was paid by the executors, depends on the construction which is to be put on the following clause in the will of
 
 William Croom;
 
 “Heave all my lands between
 
 Mkin’s
 
 branch, the river, Kinston and the main road, to be sold on a credit of one, two or three years, at public or private sale, at the discretion of my executors. I leave also, all the residue of my estate to be sold on a credit of twelve months, lands rented and negroes hired, except
 
 Richard’s
 
 lot of land, and negroes, the possession of which together with the
 
 Adkins
 
 mill, I wish him to have at my death. And the monies arising from the sale of the lands, stock, produce, rent, and hire of negroes, to be applied to the settlement of my estate, paying my son,
 
 Wm. Croom,
 
 two thousand, or twenty-five hundred or three thousand dollars. if there be a sufficient surplus.” The testator’s will makes the law for the disposition of his property, and the duty of those who are called upon to expound it, is to endeavor by all the means of interpretation within their reach, to ascertain that intent. As his intent in this clause is not expressed in the plainest terms, it becomes important to examine the whole of the will, and see whether we can derive from any other part of it, assistance in expounding that which has been before set forth, and is now under consideration. The testator describes himself as of Newington, Lenoir county, N. Carolina, and then on a journey to Florida. In the
 
 *252
 
 f5rst place, he gives to bis wife,
 
 for the term of her life,
 
 and the adjoining lands, the stock and furniture upon it, and the negroes that he obtained by rnar-ilage with her. He then gives to his son
 
 Hardy,
 
 his Falling Creek lands, and all the stock and negroes ot which he was already in possession, and one negro besides, by name. He gives to his next son,
 
 Bryan,
 
 whom he states as residing in Florida, all the negroes there, in his possession, and two negroes by name, in the possession of one
 
 Joshua Byrd,
 
 and all his right of lands in Florida, and also the sum of
 
 two thousand dollars,' to he paid out of the sale of his estate,
 
 to aid
 
 Bryan
 
 in purchasing more lands in Florida. By the next clause, he gives to his son
 
 Richard,
 
 his lands below
 
 Atkins’
 
 branch, describing their bounds particularly. By tiie succeeding clause, ho gives to his son
 
 William,
 
 his Tower Hill plantation, which he particularly describes. In the next, he gives to his daughters
 
 Anne
 
 and
 
 Eliz>a,
 
 equally to be divided between them, all the lands lying below the Tower Hill tract. And in the following clause, he gives to his son
 
 George Alexander,
 
 the lands devised to his mothér for life, and requests her to convey to this son, lands which s.he owned by gift from her father,
 
 in order to make his share equal with the shares of the other children;
 
 and for the same purpose gives him two ne-groes, in addition to those which he is to derive from the division thereinafter directed. Then, by the next section, he directs, that all his negroes not before given away shall be divided among his five younger children,
 
 Richard,
 
 Anne,
 
 William, Eliza
 
 and
 
 George. Alexander,
 
 to be divided among them by families. Then follows the section which has been before particularly recited ; and finally he. appoints executors, one of whom he requests to act as guardian of
 
 his son William, until he
 
 shall arrive at age.
 

 We learn then, from this general view of the will, that the testator’s two eldest children were settled off and portioned, although titles had not yet been made for the property put into their possession — that the defendant whom he ■names as the first of his five younger children, was at an
 
 *253
 
 age which fitted him for being- settled and portioned off, ami that
 
 William,
 
 the second in order of these five, was yet a minor. We learn, also, by the terms used in the devise and bequest to his youngest child
 
 George,
 
 that
 
 equality
 
 in the division of his property among his children, was a primary purpose of the will. Wo discover too, from a comparison of the clause in which ho gives two thousand dollars to his son
 
 Briján,
 
 to be raised out • of the sales of his estate, with the expressions in the clause we are construing, paying my. son
 
 Bryan
 
 two thousand dollars, or twenty-five hundred, or three thousand dollars if there be a sufficient surplus,” that lie had in view a
 
 definite
 
 fund, which hehad no doubt would raise the smallest of these sums, and which possibly" might bo sufficient
 
 to
 
 raise the largest of them.
 

 The phrase, “lands rented and negroes hired” in this perplexing section of the will, is exceedingly.vague. — .
 
 What
 
 lands are to be rented and
 
 what
 
 negroes to be hired ? Doe.s lie mean
 
 all
 
 the lands of which he died seized, and all his negroes except those allotted for the portion of his third son? If ho lias said so explicitly, there is no room for construction ; .but ho lias not, and there seem to he insuperable objections to putting such an interpretation on these words. The provision made for his wife is for her life only, and would leave her for some time at least after his death, and if the interpretation contended for by the defendant be correct, might leave her during life, without a home and the means to enjoy it. He could not have meant to include the lands and negroes left to her
 
 for life,
 
 in this disposition. With respect also
 
 to the
 
 property which he liad advanced provisionally to his two elder children, and. which advancement he here confirmed, terms- more explicit than those he has used would bo necessary, to show that this was a part of the property to be hired and rented, ami that the children, thus advanced, wore to ho dispossessed by his executors of the patrimony which they were actually enjoying. The lands and- negroes here intended, are those given to the minor children, which they were not of age to manage, and the profits of which for a time were to be
 
 *254
 
 applied in aid of the fund created for the payment of his debts and satisfaction of the pecuniary legacy to his second son.
 
 Richard’s
 
 lands and share of the negroes are in terms excluded from it, because although he had not yet been portioned off, ho was the next in order to be settled, and had attained in the testator’s estimation, a proper age for that purpose.
 

 The actual contest in this case, is then between the four younger children and all the legatees including
 
 Richard ;
 
 if the construction must prevail for which he contends, then as to the younger children, the equality which their father intended, must be fatally defeated.— The enquiry now presents itself on these words, “ lands rented and negroes hired,” for what length of time is this property directed to be rented and hired — how many years of the profits of the lands and negroes, allotted to the four yoongest children, are appropriated in aid of the fund for the creditors and his pecuniary legatee ?— The defendant contends that this charge on the property is indefinite, and.that the profits must be thus applied, until all the debts are discharged and
 
 Bryan’s
 
 legacy paid, and that if the creditors and legatee will grant no further indulgence, it must be sold for this purpose. An indefinite charge to this effect, seems to be forbidden by that part of the clause which enlarges the legacy to
 
 Bryan,
 
 from two thousand to twenty-five hundred or even three thousand dollars
 
 “
 
 if there be a sufficient surplus.” If the charge was unlimited in its duration, how and when was this surplus to be ascertained ?
 

 We do not understand that the testator intended to charge, with the payment of his debts, the lands devised and legacies bequeathed to these children, to the exclusion of
 
 Richard’s
 
 share, or of the shares of the others, in case the fund set apart for that
 
 purpose should
 
 prove deficient. It seems to us, that the testator intended that the negroes and lands should be hired and rented but for the space of one year, to aid in enlarging the fund for the payment of debts and raising the legacy for bis son
 
 Bryan.
 
 For after directing that the tract of land should be sold in such manner as suited his executors, he proceeds
 
 *255
 
 ill us, “I leave also all the residue of my estate to be sold on a credit of twelve months, lands rented and nc--groes hired, (except
 
 Richard’s
 
 lot of lands and negroes, the possession of which together with the
 
 Atkins
 
 mills, I wish him to have at my death.” The words, “on a credit of twelve months” are here placed in the middle of the clause sought to he construed. It is true, that according to a strict grammatical construction, this would only relate to the antecedent subject matter, to wit: the residue of his estate to be sold. But thelaw does not require that wills should be expounded according to grammatical strictness, and it is enough if we can collect the meaning of the testator, whether it be expressed grammatically or not. Satisfied that he did not intend an indefinite charge, we are presented in this very sentence with a term — a defined time in relation to a part of what is directed in it — and this defined time is in immediate connection with the direction “lands rented and uegres hired.” The two ideas, the one of time, and the other of renting and hiring, are in the testator’s mind, in the same moment, and expressed almost in the same instant. We think that the one was connected in
 
 intent
 
 also with the other, although the intention is imperfectly declared.
 

 The testator gave his executors a discretionary power to sell the lands upon a credit of one, two or three years. This discretion, probably, was designed by the testator to be exercised by his executors, as circumstances might enable them to make arrangements with the creditors. The sale of the residue of the estate on a credit of twelve months, hire of the negroes and rents of the land, would produce a fund, which might be collected and reduced into money during the second year after his death, and enable the executors to extinguish the debts by the time they were compelled by law to settle the estate. The executors, at the end of two years having settled the estate by paying the debts, would know whether there was a surplus sufficient to pay
 
 Bryan,
 
 either of the sums bequeathed to him by the will. Upon examining the whole will, we think the testator did not intend that his negro’és
 
 *256
 
 s¡|0l,]<j pc hired and his lands rented, but for the term of one year. And we are unable to collect from the man-nor in which this clause is worded, that the testator intended to charge his debts upon the devises and legacies given to the wife and other children, to the exclusion of the lot and share given to Richard. The circumstance of
 
 Richard’s
 
 lot and share being payable immediately on the death of the testator, when taken in connection with all that is to be found in the will, does not raise an inference strong enough, to induce us to declare that his legacy was intended to be freed at all events from contribution. If the fund, which, according to this opinion, has been expressly created by the testator for the payment of his debts, that is to say, the property directed to be sold for that purpose, and the profits for one year of the lands and negroes given to the younger children, has been exhausted, then as the will is silent as to the mode in which the unsatisfied part of the debts shall be paid, the legates ought to contribute according to
 
 the
 
 ordinary rules of law. We think the judgment of nonsuit given in the Superior Court must be reversed, and we would proceed to direct a judgment to be entered, for the plaintiffs, but that from some inadvertence there are blanks left in the case agreed, with respect to the amount due according to the report, which blanks we are not author-ised to fill. Unless the parties can remove this difficulty, we can do no more than set aside the nonsuit, and remand the cause for further proceedings.
 

 Tee Curiam — Judgment eeyeesed and cause remanded.